# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLEDISTRICT OF NORTH CAROLINA
### GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 06-11104 |
| | ) | |
| JOHN WILLIAM O'QUINN, III and | ) | CHAPTER 7 |
| SHERRIE LYN O'QUINN, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | JUDGE THOMAS W. WALDREP, JR. |
| _____ | ) | |
| | ) | |
| GARY E. SHEPHARD, JR., | ) | ADVERSARY PROCEEDING |
| | ) | |
| Plaintiff, | ) | NO.07-02007 |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN O'QUINN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## PLAINTIFF'S MOTION FOR LEAVE TO APPEAL

COMES NOW Gary E. Shephard, Jr. ("Shephard"), the Plaintiff in the above-captioned Adversary Proceeding, through counsel, pursuant to Rule 8003 of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 158(a)(3), and moves for leave to appeal the Order Denying Motion for Summary Judgment entered on March 31, 2009. A copy of the Order and Memorandum Opinion is attached hereto as **Exhibit A** (hereinafter collectively, the "Order").

# I.   STATEMENT OF FACTS

In this adversary proceeding, Shephard seeks to have the judgment he obtained against Debtor John O'Quinn ("Debtor") in the United States District Court for the Eastern District of Tennessee deemed nondischargeable in the Debtor's bankruptcy case. Shephard was at one time employed by the Debtor's company, and paid for and received health insurance benefits from the company. (Order at 2.) The Debtor failed to pay the insurance premiums as required and failed to properly notify Shephard of this fact, all the while telling Shephard that the premiums had been paid and the insurance coverage was current. (Id. at 2.) In reliance on the Debtor's representations, Shephard had an operation on his knee, only to find out later that his coverage had lapsed. (Id. at 3.) This lapse in coverage caused Shephard to suffer damages in the form of unpaid medical expenses, hardship in obtaining new insurance coverage, loss of priority on the transplant list, and harassment from collection calls. Id.

Shephard sued the Debtor in the United States District Court for the Eastern District of Tennessee for violations of the Employee Retirement Income Security Act ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA"). (Id. at 3.) The Debtor's response was a series of delays, filing insufficient answers, filing answers late, and then refusing to participate in discovery as ordered by the court. (Id at 4.) Finally, after the Debtor failed to respond to a show cause order, the court entered a default judgment against the Debtor and his company (the "Tennessee Judgment"). (Id.)

After the Tennessee Judgment was entered, the Debtor filed bankruptcy. Shephard commenced an adversary proceeding (the "Adversary Proceeding") to determine that the Tennessee Judgment was nondischargeable in the Debtor's bankruptcy because the Debtor breached his fiduciary duty under ERISA and committed defalcation, and that Shephard's damages resulted from the Debtor's breach of his fiduciary duty and defalcation. Shephard moved for summary judgment on the grounds that the Tennessee Judgment was entitled to collateral estoppel effect, and therefore it conclusively determined that the Debtor had breached his fiduciary duty under ERISA.

The Bankruptcy Court denied summary judgment and held that the Tennessee Judgment was not entitled to collateral estoppel effect. The Bankruptcy Court based its opinion on the fact that the Debtor had not substantially participated in the litigation leading to the Tennessee Judgment and therefore, that judgment was not entitled to preclusive effect.

## II.   QUESTION ON APPEAL

On appeal, Shephard requests that the District Court review the Bankruptcy Court's Order denying summary judgment. Specifically, the issue presented is whether the Bankruptcy Court erred in determining that the Tennessee Judgment is not entitled to collateral estoppel effect in the Adversary Proceeding. Shephard requests that the Bankruptcy Court's order denying summary judgment be reversed, and that the Tennessee Judgment be given full collateral estoppel effect.

## III.   ARGUMENT

### A.   Interlocutory Appeal Should Be Granted Under the Collateral Order Doctrine.

The Bankruptcy Court's Order denying summary judgment is appealable under the collateral order doctrine.  Pursuant to 28 U.S.C. § 158(a)(1), bankruptcy court orders may be appealed to the district court if they are "final."  Ordinarily, an order denying summary judgment is not a final order and is therefore not appealable under 28 U.S.C. § 158(a)(1).  However, an exception to the finality requirement is the collateral order doctrine.  The collateral order doctrine has been applied in the context of bankruptcy appeals.  See e.g., In re Jackson Brook Institute, Inc., 227 B.R. 569, 576 (D.Me. 1998) (quoting Colliers).

Three conditions are required for the collateral order doctrine to apply: "an order must '[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal.'"  South Carolina State Board of Dentistry. v. Federal Trade Commission, 455 F.3d 436, 441 (4th Cir. 2006) (quoting Will v. Hallock, 126 S.Ct. 952, 957 (2006)).  Here, all three of these conditions are met.

First, the Order conclusively holds that the Tennessee Judgment is not afforded collateral estoppel effect in the adversary proceeding.  Second, the Order resolves a matter separate from the merits of the action.  The preclusive effect of the Tennessee Judgment is separate and apart from the merits of the underlying case, whether Defendant's debt to the Plaintiff is non-dischargeable in the Defendant's bankruptcy case.

4

Finally, the Order will be effectively unreviewable from appeal on a final judgment because, by that point, the matter will have been already been tried a second time. "To be 'effectively unreviewable,' an order must protect an interest that would be 'essentially destroyed if its vindication must be postponed until trial is completed.'" South Carolina State Board of Dentistry, 455 F.3d at 443 (citing Lauro Lines S.R.L. v. Chasser, 490 U.S. 495 (1989)). Here, by the time a truly final order is entered, Shephard will have already been forced to pay for and proceed with a second trial on the merits of the action, and would therefore essentially destroy any benefit to Shephard of the Tennessee Judgment.

## B. Interlocutory Appeal Is Also Appropriate Under Traditional Permissive Appeal Criteria.

Even if the collateral order doctrine does not apply, the Order should still be immediately appealable. Pursuant to 28 U.S.C. § 158 (a)(3), the district courts of the United States have jurisdiction to hear appeals "with leave of the court, from interlocutory orders and decrees" issued by the bankruptcy courts. Pursuant to Rule 8001(b) of the Federal Rules of Bankruptcy Procedure, appeals under 28 U.S.C. (a)(3) are taken by filing a notice of appeal and a motion for leave to appeal with the bankruptcy court.

The order denying summary judgment is interlocutory. However, in this case grounds exist to authorize interlocutory review. Leave to file an interlocutory appeal is appropriate when:

> 1) the order involves a controlling question of law, 2) as to which there is substantial ground for a difference of opinion, and 3) immediate appeal would materially advance the termination of the litigation.

KPMG Peat Marwick, LLP v. Estate of Nelco Ltd., Inc., 250 B.R. 74, 78 (E.D.Va. 2000). All three factors must be met in order to grant leave to appeal an interlocutory order. *Id.*

First, the Order involves a controlling issue of law. The Fourth Circuit has interpreted this requirement to mean a "narrow, dispositive question of pure law." Id. at 79 (citation omitted). The issue decided by the Bankruptcy Court in the Order was whether the Tennessee Judgment is entitled to collateral estoppel effect. Whether collateral estoppel applies is a question of law. See e.g., Gober v. Terra + Corp (Matter of Gober), 100 F.3d 195, 1201 (5th Cir. 1996). The issue is controlling because, if the Tennessee Judgment is given collateral estoppel effect, the matter will be effectively ended without the need for a trial. See e.g., In re Perry H. Koplik & Sons, Inc., 377 B.R. 69, 73-74 (S.D.N.Y. 2007) (stating that a question of law is controlling if its reversal would terminate the action).

Second, there are substantial grounds for difference of opinion. This requires more than merely an assertion that the bankruptcy court decided the issue incorrectly, but rather that there be a substantial difference of opinion "between courts on a given controlling question of law, creating the need for an interlocutory appeal to resolve the split or clarify the law." KPMG, 250 B.R. at 83 (citation omitted). In fact, the Bankruptcy Court's Memorandum Opinion cites several cases that do give collateral estoppel effect to federal default judgments, as well as cases that do not. (Mem. Op. pp. 7-13.)

Third, allowing this appeal would materially advance the termination of the litigation. "[A]n immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or to shorten the time required for trial." Koplik & Sons, 377 B.R. at 74 (citation omitted). Here, reversing the Order and affording collateral estoppel effect to the Tennessee judgment will obviate any need for a trial and bring the matter to a swift close. Shephard has already paid to litigate this issue once. Granting this appeal will allow him to challenge the denial of the summary judgment without having to first pay for another trial.

### C.    Exceptional Circumstances Exist to Allow Interlocutory Appeal.

Finally, this case presents exceptional circumstances that weigh in favor of allowing the interlocutory appeal. "Exceptional circumstances that warrant interlocutory review include cases where prohibiting review would force an appellant to irrevocably lose an important right, and cases where an appellant will effectively be denied review if the proceeding progresses to its natural end." In re Fox, 241 B.R. 224, 233 (10th Cir. BAP 1999). Here, Shephard has already litigated this matter once to conclusion. Denial of this interlocutory appeal would force him to choose between dropping his lawsuit or continuing to incur legal expenses to litigate this matter for a second time. These expenses are even greater in this case given that a successful result will only lead to a judgment against a party who has already filed Chapter 7 bankruptcy and has limited assets or potential to repay the judgment.

## VI.    Conclusion

For the reasons set forth above, Shephard's Motion for Leave to Appeal should be granted.


Respectfully submitted, this the 24th day of April, 2009.

/s/ C. Scott Meyers
C. Scott Meyers
N.C. State Bar No. 30651
Ellis & Winters, LLP
333 N. Greene Street, Suite 200
Greensboro, North Carolina 27401
T:  (336) 217-4193
F:  (336) 217-4198
scott.meyers@elliswinters.com
*Attorney for Plaintiff*

## Certificate of Service

The undersigned hereby certifies that a copy of the foregoing was served on the following via the ECF system:

William E. Brewer, Jr.
619 N. Person Street
Raleigh, NC  27604

This the 24th day of April, 2009.

/s/ C. Scott Meyers
C. Scott Meyers

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOHN WILLIAMS O'QUINN, III and | ) | Case No. 06-11104 |
| SHERRIE LYN O'QUINN, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| GARY E. SHEPHARD, JR. | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 07-02007 |
| v. | ) | |
| | ) | |
| JOHN WILLIAMS O'QUINN, III | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

Pursuant to the memorandum opinion entered contemporaneously herewith, it is

ORDERED that the Motion for Summary Judgment, filed by Plaintiff Gary E. Shephard, Jr. on

November 14, 2008, is hereby DENIED.

**EXHIBIT**
**A**

March 31, 2009

THOMAS W. WALDREP, JR.
UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### GREENSBORO DIVISION

IN RE: )
)
JOHN WILLIAMS O'QUINN, III and )     Case No. 06-11104
SHERRIE LYN O'QUINN, )
)
      Debtors. )
)
_____ )
GARY E. SHEPHARD, JR. )
)
      Plaintiff, )     Adv. No. 07-02007
)
v. )
)
JOHN WILLIAMS O'QUINN, III )
)
      Defendant. )
_____ )

## MEMORANDUM OPINION

This matter came before the Court on February 20, 2009 upon the Motion for Summary

Judgment filed by Plaintiff Gary E. Shephard, Jr. on November 14, 2008. At the hearing, C.

Scott Myers appeared on behalf of the Plaintiff and William E. Brewer, Jr. appeared on behalf of

John W. O'Quinn, III, the above-referenced male debtor. The Shepard complaint asks the Court

to declare the indebtedness owed by O'Quinn to Shepard to be nondischargeable pursuant to

Sections 523(a)(4) and (6) of the Bankruptcy Code. Shephard contends that the default

judgment that was entered against O'Quinn in the United States District Court for the Eastern

District of Tennessee bars relitigation of the underlying facts and compels summary judgment in

his favor. After consideration of the Motion for Summary Judgment, the arguments of the

parties, and the relevant law, the Court will deny the Motion.

1

## I. JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28

U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States

District Court for the Middle District of North Carolina on August 15, 1984. This is a core

proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I) which this Court has the jurisdiction

to hear and determine.

## II. BACKGROUND AND PROCEDURAL HISTORY

The facts are drawn from the pleadings in this case and in the Tennessee action. They are

not in dispute. From November 2002 until August 1, 2003, Shephard was employed by O'Quinn

Enterprises, Inc. ("OEI"). O'Quinn was the owner and president of OEI. As an employee of

OEI, Shephard was eligible to participate in OEI's group heath insurance plan through Blue

Cross/Blue Shield of Tennessee. The cost of the health insurance premium was split between the

employer and the employee. OEI deducted $59.83 per pay period from Shephard's paycheck for

his portion of the health insurance premium.

In the summer of 2003, Shephard learned that he needed to have surgery on his left knee.

In accordance with the requirements of his insurance plan, Shephard obtained prior approval for

the surgery from Blue Cross/Blue Shield and scheduled the surgery for August 4, 2003. On

August 1, 2003, Shephard was laid off due to lack of work. O'Quinn told Shephard that the

layoff was temporary and that his insurance premium was paid for the month after his layoff.

O'Quinn assured Shephard that his health insurance would still be effective the following week

when he had knee surgery and that OEI would pay his Consolidated Omnibus Budget

Reconciliation Act of 1986 ("COBRA") premium for the first two months after his layoff. On

2

August 4, 2003, Shephard underwent knee surgery.

In the fall of 2003, Shephard received bills from the hospital and various medical professionals stating that he owed approximately $25,000 in unpaid medical expenses. In January of 2004, a representative of Blue Cross/Blue Shield informed Shephard that his health insurance coverage had lapsed prior to the surgery and that his unpaid medical expenses would not be covered. Shephard discovered that for some period of time the amounts that were deducted from his pay were not being applied to his health insurance premium and that he did not have COBRA coverage as promised. The lapse in coverage adversely affected Shephard's ability to obtain new insurance coverage, as his knee problem was considered a preexisting condition. The coverage lapse also placed him last on a transplant list, delaying his ability to obtain complete treatment for his condition. Further, the Shephards began receiving letters and phone calls from collection agencies to recover the costs of surgery and recovery expenses that would have been paid by Blue Cross/Blue Shield if Shephard's insurance coverage had been effective.

On February 5, 2005, Shephard initiated a lawsuit against O'Quinn and OEI (the "Defendants") in the United States District Court for the Eastern District of Tennessee (the "Tennessee Action"). In his complaint, Shephard alleged breach of fiduciary duty, conversion, and violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. After receiving an extension of time, the Defendants answered the complaint, albeit insufficiently. The Defendants' answers failed to comply with Rule 8(b) of the Federal Rule of Civil Procedure because they stated that each of Shephard's allegations was "not admitted or denied," without any further explanation. On April 12, 2005, the District Court

3

entered an order requiring the Defendants to file amended answers conforming to Rule 8 within twenty days. Neither Defendant filed an amended answer. On May 5, 2005, Shephard moved to amend his complaint, which was granted on June 2, 2005. On July 5, 2005, after neither Defendant filed an answer to the amended complaint, Shephard moved for an entry of default for "failure to plead or otherwise defend" the action. The next day, both Defendants filed motions for leave to file answers, and they also filed their answers to the amended complaint. While OEI's answer responded to the new allegations contained in the amended complaint, O'Quinn filed the same answer as before. On July 7, 2005, Shephard opposed the Defendants' motions, and the Defendants filed their reply. The Defendants also filed a joint response to Shepard's motion for entry of default. The District Court denied Shepard's motion for entry of default inasmuch as the Defendants had already filed answers to the amended complaint. On August 26, 2005, the Defendants' counsel attended the scheduling conference. On December 6, 2005, Shephard filed a second motion for entry of default. In an affidavit supporting an entry of default, Shephard's attorney stated that the Defendants had failed to cooperate in discovery, to produce the Rule 26(a) pleadings, and to cooperate in other respects under the scheduling order and the Federal Rules of Civil Procedure. Neither Defendant responded to Shephard's motion. On January 4, 2006, the District Court entered a show cause order, ordering the Defendants to explain why a default should not be entered. Neither Defendant responded to the show cause order, and the clerk entered a default on February 1, 2006. On February 2, 2006, Shephard filed a motion for default judgment. The District Court then held a hearing to determine damages. Again, the Defendants did not appear or respond. On April 26, 2006, the District Court granted a default judgment, finding the defendants liable to Shephard for $119,968.50.

4

On September 20, 2006, O'Quinn filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code. Shephard timely filed this adversary proceeding. O'Quinn filed a motion to dismiss the adversary proceeding for failure to state a claim upon which relief may be granted, which this Court granted with respect to the ERISA and COBRA violations pursuant to Section 523(a)(6), and denied with respect to the ERISA and COBRA violations pursuant to Section 523(a)(4). Shephard then filed the Motion for Summary Judgment currently before the Court. In the Motion, Shephard alleges that the default judgment in the Tennessee Action conclusively established the elements necessary to hold the debt nondischargeable under Section 523(a)(4) as a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

### III. STANDARD FOR SUMMARY JUDGMENT

The standard for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which is made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Rule 56 provides that the moving party will prevail on a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970). In considering a motion for summary judgment, a court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), cert. denied, 513 U.S. 813 (1994). The moving party has the burden of establishing that there is an absence of any genuine issue of material fact, and all reasonable

5

inferences must be drawn in favor of the nonmoving party. Celotex, 477 U.S. at 323.

## IV. ANALYSIS

Under the doctrine of collateral estoppel, once an issue of fact or law is resolved by the final judgment of a court, then it is conclusively resolved in subsequent actions between the parties. Wolstein v. Docteroff (In re Docteroff), 133 F.3d 210, 214 (3rd Cir. 1997); Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush), 62 F.3d 1319, 1322 (11th Cir. 1995). Thus, "[c]ollateral estoppel precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding." Hagan v. McNallen (In re McNallen), 62 F.3d 619, 624 (4th Cir. 1995). The principles of collateral estoppel apply in dischargeability proceedings in bankruptcy court. Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991). When determining whether to give a prior federal court action preclusive effect based on collateral estoppel, courts apply federal common law principles of collateral estoppel. Docteroff, 133 F.3d at 214; Shoup v. Bell & Howell Co., 872 F.2d 1178, 1179-80 (4th Cir. 1989); McCart v. Jordana (In re Jordana), 232 B.R. 469, 475 (10th Cir. B.A.P. 1999); Nestorio v. Assocs. Commercial Corp. (In re Nestorio), 250 B.R. 50, 55 (D. Md. 2000). Under the federal standard, before a party will be estopped from relitigating an issue, the following elements must be present: (1) the issue sought to be precluded was the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a valid and final judgment; and (4) the determination was essential to the prior judgment. Combs v. Richardson, 838 F.2d 112, 115 (4th Cir. 1988) (citing In the Matter of Ross, 602 F.2d 604, 607-608 (3rd Cir. 1979)); Restatement (Second) of Judgments § 27 (1982).

6

The question before the Court is whether the issues were "actually litigated" in the Tennessee Action. Ordinarily under federal law, a judgment entered by default will not support the application of collateral estoppel because "[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated." Restatement (Second) of Judgments § 27 cmt. e (1982); see Bush, 62 F.3d at 1323; Meyer v. Rigdon, 36 F.3d 1375, 1379 (7th Cir. 1994); M & M Transmissions, Inc. v. Raynor (In re Raynor), 922 F.2d 1146, 1149-50 (4th Cir. 1991); U.S. v. Gottheiner (In re Gottheiner), 703 F.2d 1136, 1140 (9th Cir. 1983). The underlying rationale for the general rule is that a party may decide that litigating an issue may cost more than the value of the lawsuit[1] or the forum may be inconvenient. In essence, a party may choose not to litigate issues for reasons that have nothing to do with the merits of the case. "The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before." Wright, 187 B.R. at 833-34 (quoting Restatement (Second) of Judgments § 27 cmt. e (1982)).

However, courts in a majority of circuits recognize an exception to the "actually litigated" requirement.[2] If a party actively participates in litigation prior to the entry of a default

---

[1]"[A] debtor might reasonably suffer default judgments prior to bankruptcy, relying on their presumptive dischargeability. Only when a creditor holding such a judgment seeks to have that particular debt excepted from discharge will such a debtor have the incentive to mount a defense to the creditor's factual allegations supporting nondischargeability. Such principles are in harmony with the Restatement's Official Comment e, which recognizes a cost-benefit analysis as one of the 'many reasons why a party may choose not to raise an issue, or to contest an assertion.'" FTC v. Wright (In re Wright), 187 B.R. 826, 836 (Bankr. D. Conn. 1995).

[2]Some courts have questioned the exception to the general rule. For example, in Fed. Ins. Co. v. Gilson (In re Gilson), 250 B.R. 226 (Bankr. E.D. Va. 2000), Judge Mayer criticized the exception because the determination of whether a party's participation in a prior action is

7

judgment, a federal court can apply collateral estoppel and prevent that party from relitigating the issues decided by the judgment. Docteroff, 133 F.3d at 215; Bush, 62 F.3d at 1324-25; Fed. Deposit Ins. Co. v. Daily (In re Daily), 47 F.3d 365, 368-69 (9th Cir. 1995); Gottheiner, 703 F.2d at 1140; Jordana, 232 B.R. at 477-78; Nestorio, 250 B.R. at 56-57. These courts reason that when a party actually participated and had a full and fair opportunity to actually litigate the issues in the prior action, but engaged in obstructive conduct resulting in a default judgment, it would be inequitable to reward that conduct by giving the party another opportunity to litigate the same issue in a different forum. Melnor, Inc. v. Corey (In re Corey), 394 B.R. 519, 527-28 (10th Cir. B.A.P. 2008).

    Cases applying the exception to the "actually litigated" requirement typically involve extensive participation, abuse of process, or a combination thereof in the prior proceeding. See Docteroff, 133 F.3d at 215 (defendant filed an answer, noticed the plaintiff's deposition, engaged several lawyers, filed pleadings with the court, and corresponded with opposing counsel); Bush, 62 F.3d at 1323, 1324-25 (defendant filed an answer and counterclaim, exchanged requests for documents and trial exhibits, but failed to appear at noticed deposition); Daily, 47 F.3d at 368 (defendant actively participated in prior action for two years after stipulating to modify automatic stay in bankruptcy to proceed in RICO action in federal district court); Gottheiner, 703 F.2d at 1140 (defendant defended lawsuit for sixteen months by filing pleadings and by answering and propounding discovery); Corey, 394 B.R. at 528 (defendant obtained the vacation

---

substantial enough to apply the exception is too arbitrary. "How much obstreperous or bad faith conduct precludes subsequent dischargeability litigation? Is the standard objective misconduct or subjective intent?" Id. at 234. "It is . . . difficult to discern when 'participation' becomes 'substantial participation' and would satisfy an 'actually litigated' requirement." Id. at 235.

8

of a default judgment, unsuccessfully challenged the court's jurisdiction over his person, answered the complaint, propounded discovery, responded to discovery, filed a motion to compel discovery, filed a motion to reconsider, and requested that his trial be held before a jury); Jordana, 232 B.R. at 472 ("[D]efendant Jordana has assiduously pursued a policy of obfuscation, refusing to cooperate in discovery and refusing to answer the plaintiff's First Amended Complaint, in spite of repeated warnings by both plaintiff's counsel and this Court."); Nortman v. Smith (In re Smith), 362 B.R. 438, 444 (Bankr. D. Ariz. 2007) (defendant actively participated in prior litigation for over a year by filing responsive pleadings and a third party complaint, and by engaging in mediation and depositions); Int'l Strategies Group, Ltd. v. Pomeroy (In re Pomeroy), 353 B.R. 371, 382 (Bankr. D. Mass. 2006) (defendant hired counsel, filed an answer and affirmative defenses, initially responded to discovery, objected to a preliminary injunction, and then assented to a stipulation regarding the equitable relief); NBA Properties, Inc. v. Moir (In re Moir), 291 B.R. 887, 893 (Bankr. S.D. Ga. 2003) (defendant actively participated in prior action, answered the complaint, filed a counterclaim, and filed discovery requests). These factors should be taken into consideration in determining whether a party's participation falls under the exception, a determination that is "within the sound discretion of the trial court." Bush, 62 F.3d at 1325 n.8 (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331 (1979)).

In Daily, the Federal Deposit Insurance Corporation (the "FDIC") filed a complaint objecting to the dischargeability of a debt in the debtor's bankruptcy case, which was pending in the United States Bankruptcy Court for the District of Hawaii. 47 F.3d at 366. The FDIC also filed a civil RICO complaint in the United States District Court for the District of Kansas. Id. The FDIC sought relief from the automatic stay to join the debtor as a defendant in the district

9

court action, which was granted. Id. In the district court action, the FDIC propounded discovery requests for almost two years before seeking relief under Rule 37. Id. at 367. The district court found that the debtor's failure to provide discovery was "the result of a deliberate, dilatory course of conduct" and that his "strategy of delay and evasiveness" had "significantly prejudiced the plaintiffs." Id.; see Fed. Deposit Ins. Co. v. Renda, 126 F.R.D. 70, 72-73 (D. Kan. 1989). The district court then sanctioned the debtor by ordering that all allegations of the complaint be deemed admitted and by entering a default judgment in favor of the FDIC. Id. The FDIC then moved for summary judgment in the bankruptcy case. Id.

The Ninth Circuit noted that the judgment in the RICO action was not an ordinary default judgment in which the debtor decided that the burden of litigation outweighed any benefit and chose not to appear. Id. at 368. Rather, the debtor actively participated, "albeit obstructively," for two years before judgment was entered. The court declared that:

> A party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound, in subsequent, related proceedings involving the same parties and issues, by a prior judicial determination reached without completion of the usual process of adjudication. In such a case the "actual litigation" requirement may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so.

Id. The court further explained that denying preclusive effect to the prior judgment would permit the debtor "to delay substantially and perhaps ultimately avoid payment of the debt by deliberate abuse of the judicial process." Id. at 369.

Six months after Daily, the Eleventh Circuit reached a similar result in Bush. 62 F.3d at 1325. Bush filed an answer and a counterclaim to allegations of fraud in the United States District Court for the Southern District of Florida. Id. at 1321. For several months, the parties

10

commenced discovery, exchanging requests for documents and trial exhibits. Id. However, after

Bush's counsel withdrew and Bush proceeded pro se, he failed to produce trial exhibits, appear

for depositions, and produce documents. Id. After failing to appear at a pre-trial conference, the

district court sanctioned Bush by entering a default judgment on the grounds stated in the

complaint. Id. at 1321-22. Ten months later, Bush filed a voluntary Chapter 7 bankruptcy

petition. Id. at 1322. Balfour filed an adversary complaint to determine dischargeability and a

motion for summary judgment based on the prior default judgment. Id. Bush, like the debtor in

Daily, defended the motion for summary judgment on the ground that the issue of fraud had not

been actually litigated. Id. The court found that Bush actively participated in the prior action

over a lengthy period of time. Id. at 1324. "Subsequently, he engaged in dilatory and

deliberately obstructive conduct, and a default judgment, based upon fraud, was entered as a

sanction against him. . . . Such abuse of the judicial process must not be rewarded by a blind

application of the general rule denying collateral estoppel effect to a default judgment." Id.

   On the other end of the spectrum are cases in which the debtors barely participated, if at

all, in the underlying action. In Trustees of the Colorado Laborers' Health and Welfare Trust

Fund v. Sukut (In re Sukut), 357 B.R. 840 (Bankr. D. Colo. 2006), the district court entered a

default against the debtor after she failed to respond to the complaint. At the evidentiary hearing

upon the Trustee's motion for default judgment, the debtor appeared but did not present evidence

or cross-examine witnesses. Id. at 842. Before entering final judgment, the district court

scheduled another hearing to afford the debtor another opportunity to participate, yet the debtor

did not appear. Id. at 843. The debtor never filed any documents, retained counsel, or

participated in discovery. Id. at 846. In the subsequent nondischargeability action in bankruptcy

11

court, the plaintiffs moved for summary judgment on the basis of collateral estoppel. Id. at 842. In denying summary judgment, the bankruptcy court found that the debtor did not meaningfully participate in the prior action in any fashion, let alone in an obstructive manner. Id. at 846. Rather, the debtor defaulted at the outset and gave up. Id.

In Gilson, a lawsuit was brought in the United States District Court for the Southern District of New York upon allegations of fraud. 250 B.R. at 230. Gilson filed an answer denying the allegations but soon thereafter filed her bankruptcy petition, staying the district court action. Id. Federal Insurance Company ("FIC") then filed a nondischargeability complaint. Id. Gilson filed an answer to the nondischargeability complaint but did not respond to discovery. Id. FIC filed a motion to compel, which was resolved by terminating the automatic stay to fully litigate the matter in the district court. Id. Gilson did not respond to discovery requests in the district court action. Id. The district court entered default against her as a sanction for failure to respond to discovery. Id. The magistrate judge gave Gilson an opportunity to submit evidence and respond to FIC's evidence as to damages. Id. at 231. Gilson asserted her Fifth Amendment privilege against self-incrimination. Id. Gilson did not object to the report and recommendation of the magistrate judge, and a default judgment was entered against her. Id.

In rejecting the argument that the actually-litigated requirement was met by substantial participation in the prior litigation, the Gilson court noted the difficulty in discerning when "participation" becomes "substantial participation" and how much obstreperous or bad faith conduct precludes subsequent dischargeability litigation because these determinations require an inquiry into the subjective intent of the debtor. Id. at 234-35. "Applying collateral estoppel based on subjective intent does not necessarily permit the discovery of the truth of the

12

underlying matter, the alleged nondischargeable debt, particularly where the defendant because of his default is not present." Id. at 235. While Gilson did retain counsel and answer the complaint, she did not engage in any other significant activity. Id. The court concluded that Gilson's conduct did not rise to the level of activity in Daily or Bush. Id.

Shepard argues that this case is factually similar to Daily, Bush, and other cases with a high degree of defendant participation. Shephard asserts that, like those cases, O'Quinn was represented by counsel and filed several motions, extending the prior action for over a year before default was entered. He further argues, that, as the Bush court stated, "[i]t would be fundamentally unfair to force [the plaintiff] to spend time and money preparing the same discovery simply because [the defendant] has determined that he now wishes to defend the allegations of fraud and avoid his judgment debt in bankruptcy court." 62 F.3d at 1325. However, all discovery in this case has ended, so Shepard will not be required to conduct any further discovery.

The degree of participation by O'Quinn in the Tennessee Action[3] was much closer to that in Gilson than to Daily and Bush. As in Gilson, O'Quinn's participation in the Tennessee Action centered around answering the complaint and the amended complaint. After the district court deemed O'Quinn's answer insufficient and Shephard filed his amended complaint, O'Quinn moved for leave to file an answer to the amended complaint, responded to Shephard's opposition to that motion, responded to Shephard's motion for entry of default, and filed his amended answer, which was identical to the original answer. O'Quinn's only other involvement consisted

---

[3]A court determining whether the exception applies in a particular case must review the entire record of the prior proceeding, not just the judgment itself. Wright, 187 B.R. at 834.

of attending the scheduling conference, through counsel. He did not respond to any pleadings, motions, or court orders after the scheduling conference. He did not appear at the default judgment hearing. While the clerk's entry of default came almost a year after the complaint was filed, O'Quinn's entire involvement in the prior action lasted less than seven months. Further, the unfairness of engaging in another round of discovery does not exist, as O'Quinn did not participate in any discovery in the Tennessee Action and no further discovery may be conducted in this case. Also, as in <u>Gilson</u>, and unlike in <u>Daily</u> and <u>Bush</u>, no evidence of dilatory and deliberate obstructive conduct exists. O'Quinn, through counsel, explained that he needed additional time to investigate the allegations, causing the delay in answering the amended complaint, which the district court accepted. In sum, O'Quinn "did not otherwise hinder or delay the judicial process" or "create unnecessary hurdles or . . . needless expenses." <u>Gilson</u>, 250 B.R. at 235.

### IV. CONCLUSION

Based on the facts and circumstances of this case, the Court concludes that the O'Quinn's limited participation and non-obstructive behavior in the Tennessee Action do not support the application of collateral estoppel because substantive issues were not actually litigated. Therefore, Shepard's Motion for Summary Judgment will be denied.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

THOMAS W. WALDREP, JR.
UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### GREENSBORO DIVISION

IN RE:                                          )
                                                )
JOHN WILLIAMS O'QUINN, III and                  )      Case No. 06-11104
SHERRIE LYN O'QUINN,                            )
                                                )
              Debtors.                          )
                                                )
_____       )
GARY E. SHEPHARD, JR.                           )
                                                )
              Plaintiff,                        )      Adv. No. 07-02007
v.                                              )
                                                )
JOHN WILLIAMS O'QUINN, III                      )
                                                )
              Defendant.                        )
_____       )

## PARTIES IN INTEREST

Gary E. Shephard, Jr.

John Williams O'Quinn, III

William E. Brewer, Jr., Esq.

C. Scott Myers, Esq.

15